UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TANIA CHANG | : | |
| | : | Civil Action No. 08-3758 |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court pursuant to the provisions of 42 U.S.C § 405(g). Plaintiff Tania Chang (hereinafter "Plaintiff" or "Chang") seeks review of the final decision of the Commissioner of Social Security finding her not disabled as defined in the Social Security Act and thus not entitled to disability insurance benefits.

I.

Tania Chang is a 40 year old woman born September 14, 1968. She is originally from Peru. She came to the United States in September, 1997, and became a United States citizen in September, 2008. She graduated from high school in Peru. She speaks very little English.. She currently lives in a house in Paterson, New Jersey with her three children. She is married, but is currently separated from her husband. She has not been employed since December 1, 2004, seven months after she was diagnosed with multiple sclerosis ("MS"). Plaintiff states that complications from her MS (headaches, dizzy spells, and hand pain) caused her to stop working.

Plaintiff's past work history involved packing, delivery, and/or sewing. From September 15, 2003, to December 1, 2004, Plaintiff worked at an optical products company where she packed optical lenses into boxes and then placed the full boxes on a shipping table. While working at the optical products company, Plaintiff stood for approximately 7 hours a day and would frequently lift items weighing 10 lbs. The heaviest item she lifted during her employment at the company was 20 lbs.

Prior to working for the optical company, Plaintiff also packed cosmetic products into boxes. This required her to stand 5 hours a day and walk 5 hours a day. *Id.* After Plaintiff packed a box of cosmetics, she would lift the box and place it in a tub. *Id.* During this employment, Plaintiff frequently lifted boxes weighing 10 lbs. *Id.* The heaviest item she lifted during her employment at the company was 20 lbs.

Plaintiff also delivered newspapers on a daily basis. This job required her to lift and carry the newspapers. The job required her to walk for 15 minutes a day and sit for 3 hours a day. At all times during this employment, Plaintiff did not lift an item weighing more than 10 lbs.

Plaintiff also previously sewed logos on t-shirts and caps. This job required her to stand and walk for 7 hours a day, and carry boxes weighing 25 lbs.

Socially, Plaintiff enjoys visiting family members on weekends and spending time with friends. Plaintiff also watches television, and listens to music. Prior to her onset of MS, Plaintiff enjoyed dancing at family parties. She does not use any assistive devices. Plaintiff takes care of herself and her family. Plaintiff readies her children for school each morning, and then drives them to school. After returning home, she cleans her house, cooks and sometimes

takes a nap.    Since being diagnosed with MS, it takes her longer to cook dinner and she requires assistance to carry laundry between her house and car.  Otherwise, Plaintiff travels and shops normally.  (R. 71).

Review of Medical Records

Initially the records of the two treating physicians (Dr. Nunez and Dr. Lequerica) are analyzed because Plaintiff's argument centers on their reports, and that ALJ Lissek did not give them substantial weight in making her determination.  Subsequent to analyzing the treating physician reports, other expert reports will be reviewed.

    A.    Dr. Jose Nunez (Treating Physician)

Dr. Jose Nunez has been the Plaintiff's family physician since April 26, 2001. On April 29, 2004, Plaintiff was diagnosed with MS.  R. 201.  This is her first major medical ailment. On May 24, 2004, she had lower abdominal and back pain lasting nearly five days.  About 18 months later, Plaintiff complained of a severe headache accompanied with dizziness.

On May 10, 2007, Dr. Nunez conducted a physical and mental "Ability to do Work-Related Activities" assessment requested by the Social Security Administration. In his physical assessment, Dr. Nunez determined that Plaintiff could occasionally lift or carry a maximum of 10 lbs and that she could frequently lift or carry items weighing less than 10 lbs. Dr. Nunez also concluded that Plaintiff's MS affected her ability to stand and walk, and that Plaintiff could stand and walk for at least 2 hours in an 8-hour workday.    Furthermore, Dr. Nunez found that although Plaintiff's MS affects her ability to sit, she may do so for about 6 hours in an 8-hour workday.  Dr. Nunez also determined that Plaintiff's MS affected her ability to push and pull with both her upper and lower extremities, stating that the "patient is very weak in upper and

lower extremities with numbness and tingling of limbs."   Additionally, Dr. Nunez opined that Plaintiff could never climb, balance, kneel, crouch, or crawl because she is "very unstable on her feet."   According to Dr. Nunez, Plaintiff had limited abilities to reach, grossly manipulate objects with her hands, and finely manipulate objects with her fingers.  Dr. Nunez also determined that while Plaintiff was unlimited in her ability to speak or hear, she would "eventually" become limited in her ability to see.   Dr. Nunez further found that Plaintiff's MS caused her to have various environmental limitations (such as temperature extremes, noise, dust, vibration, and wetness), and that she should avoid hazards like machinery, and heights.  (R. 189).

Dr. Nunez is not a psychiatrist, but he also conducted a mental assessment of Plaintiff.  Dr. Nunez noted that Plaintiff's MS caused her to experience a marked impairment in her ability to follow work rules, relate to coworkers, understand, remember, carry out simple job instructions,  maintain an acceptable personal appearance, behave in an emotionally stable manner, behave predicably in social situations, and/or be able to demonstrate reliability.  (R. 191-193).  Dr. Nunez also found moderate impairments to Plaintiff's ability to deal with the public and interact with supervisors.

     B.    <u>Dr. Steve Lequerica</u> (Treating Physician)

Dr. Steve Lequerica is the Plaintiff's neurologist. (R. 162).  The earliest medical record generated by Dr. Lequerica for the Plaintiff is dated May 10, 2004, two weeks prior to the diagnosis of MS.  (R. 172).  During Plaintiff's initial visit with Dr. Lequerica, Plaintiff complained of suffering from a headache, numb hands, and pain.

Plaintiff saw Dr. Lequerica ten times between May 10, 2004 and January 9, 2006.  On

most visits, Plaintiff complained of headaches or migraine, numbness in her extremities, and pain.

On June 1, 2005, Plaintiff underwent an MRI of her brain which was compared with an MRI from November 10, 2004.  The June 1, 2005 MRI revealed stable demyelinating lesions and no new demyelinating lesions or evidence of active demyelination.  Plaintiff underwent a third MRI of her brain on November 13, 2006. The findings suggested "low-plaque burden MS."   When compared to the previous MRI conducted on June 1, 2005, it was found that both studies appeared to be "identical  with no increased evidence of any type of plaque burden or progression
of disease."

On November 10, 2006, Dr. Lequerica conducted an "Ability to do Work-Related Activities" assessment.  In his assessment, Dr. Lequerica determined that Plaintiff could occasionally lift or carry a maximum of 10 lbs and that she could frequently lift or carry items weighing less than 10 lbs.  Dr. Lequerica also concluded that Plaintiff's MS affected her ability to stand and walk, that Plaintiff could stand and walk for less than 2 hours in an 8-hour workday.   Furthermore, Dr. Lequerica stated that Plaintiff's ability to sit was not affected by her MS.  R. 161.  Dr. Lequerica  also determined that Plaintiff's MS affected her ability to push and pull with her upper extremities, stating that, "uncoordination and weakness makes movements in arms limited ."   Additionally, Dr. Lequerica  opined that Plaintiff could never climb, but occasionally balance, kneel, crouch, or crawl "due to leg heaviness, arm and leg numbness, and vertigo."   Dr. Lequerica  also found that Plaintiff had limited abilities to reach and grip.  Dr. Lequerica found that Plaintiff could adequately see, hear, and speak.   Dr.

Lequerica also found that Plaintiff's MS caused her to have various environmental limitations and that she could not climb.

      C.     Dr. Justin Fernando

On May 23, 2006, Plaintiff was seen by Justin Fernando, M.D. for a consultative neurological examination. (R. 132). At the time of the examination, Plaintiff complained to Dr. Fernando of headaches, muscle pain in her legs and arms, back pain, dizziness, and near blackouts from time to time.  Dr. Fernando noted that Plaintiff lacked strength in her hands. Plaintiff also complained of being "weaker on the left side, and also feeling sensations to a lesser degree on the left than the right."  Plaintiff experiences headaches on a daily basis, usually lasting between 1 and 2 hours; and although her lower back and neck pain are intermittent, bending forward to clean or cook provokes it. (R. 133). Dr. Fernando reported that Plaintiff cooks, cleans, does laundry, and with assistance shops.  Plaintiff dresses and bathes herself.  Dr. Fernando also indicated that Plaintiff has great vision (20/20 on a Snellen chart).  Dr. Fernando found that her speech, dress, and gait were normal. (R. 134). Dr. Fernando found that Plaintiff's hand and finger dexterity was intact, and that she had full strength in her grip, upper extremities, and lower extremities.  It was also indicated that Plaintiff had a normal range of motion and no muscle atrophy.  While Plaintiff claimed to have diminished sensation of touch, pain, and vibration in her left extremities, Dr. Fernando was unable to perceive any diminution. (R. 135).

      D.     Dr. Paul Fulford

On January 29, 2006, Dr. Paul Fulford performed a Mental Status Examination of the Plaintiff on behalf of the Division of Disability Determination Services. (R. 127). On testing,

Plaintiff scored in the borderline range in her ability to concentrate, and her memory score was in the significantly impaired range (R. 128).  Dr. Fulford found that Plaintiff has "some depressive symptoms suggestive of an adjustment disorder with depressed mood secondary to a medical condition."

      E.      Dr. Clara Castillo-Velez

On February 3, 2006, Dr. Castillo-Velez conducted a psychiatric review of the Plaintiff. R. 146.  Dr. Castillo-Velez determined that Plaintiff's medical impairments were not severe; but that Plaintiff suffered from a mood disturbance which decreased her energy and created feelings of guilt or worthlessness.  R. 149.  Dr. Castillo-Velez also found that Plaintiff has only mild functional limitations, including her ability to function socially, concentrate, and persist. Dr. Castillo-Velez concluded that Plaintiff's depression is secondary to her medical condition. (R. 158).

There were also two two "Physical Residual Functional Capacity Assessments" completed on December 30, 2005 and May 26, 2006.  The earlier assessment determined that Plaintiff could occasionally lift or carry 20lbs and that she could frequently lift or carry items weighing 10 lbs.  (R. 120).  It also determined Plaintiff could stand and walk, and that Plaintiff could stand and walk for about 6 hours in an 8-hour workday and can sit for a total of about 6 hours in an 8-hour workday. The RFC found that Plaintiff was unlimited in her ability to push and pull, that she could frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. (R. 121). Plaintiff could frequently balance, stoop, kneel, crouch, and crawl, and there were no limitations on her abilities to reach or grasp, and she has no visual or communicative limitations.   Plaintiff was found to have environmental limitations and should avoid

concentrated exposure to extreme cold, fumes, odors, dust, gas and poor ventilation. She should also avoid hazards such as machines and heights.

The second Residual Functional Capacity Assessment was nearly identical to the first Assessment except that the medical consultant found:

> The claimant's statements of limitation are credible, but not to the degree alleged. Headache and dizziness may be attributed to MDI, however, on examination no functional limitations were identified. Per claimant report she independently performs personal care and cares for her children. She performs house hold chores of cooking, cleaning, and laundry etc. She is able to walk for 15 minutes without use of assistive device. She drives a car and transports her children to and from school.

S. Woodmansee, a consultant, recommended that "based on the totality of the evidence in file it is determined that the claimant retains the residual functional capacity to perform light level work activities. She should avoid heights and hazards due to reports of dizziness". (R. 143).

II.

Standard of Review

The Court has jurisdiction to review the Secretary's decision under 42 U.S.C. § 405(g). The Court must affirm the Secretary's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing

8

*Stunkard*, 841 F.2d at 59). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Secretary's decision. *See Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir. 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. *Id.* at § 423(d)(2)(A). *See Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.,* 220F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes,* 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458,467 (1983)); see 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466, 228 F.3d at 262; *Sykes*, 228 F.3d at 262.

### III.

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. In Step One, the ALJ found that the Plaintiff has not been engaged in substantial gainful activity since the

alleged onset of her MS. (R. 19).  At Step Two, the ALJ found that Plaintiff's MS was a severe impairment.  At Step Three the ALJ determined that Plaintiff's impairment, although severe, did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.).  At this step an ALJ must identify relevant listed impairments, discuss the evidence, and explain its reasoning.  *Burnett*, 220 F.3d at 119-120.  A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review."  Relying on the record provided, ALJ Lissek found that Plaintiff did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.R.F. § 404.  The ALJ wrote:

> Although attention was given to listing 1.02 for major dysfunction of a joint, the specified criteria require of the listing was not demonstrated by the available medical evidence.  Specifically, the listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. . . . In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in1.00B2c or the degree of difficulty ambulating as defined in 1.00B2b.  Similarly, the evidence fails to document any disorganization of motor function as described in 11.04B or visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02, or any significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process as specifically required in listing 11.09 for Multiple Sclerosis.

Because the Plaintiff's severe MS does not meet one of the listed impairments in 20 C.R.F. § 404, the ALJ proceeded to Steps Four and Five. In Step Four, the ALJ considered whether the plaintiff "retains the residual functional capacity to perform her past relevant work." *Plummer*, 220 F.2d at 428; *see Sykes*, 228 F.3d at 263; 20 C.R.F. § 404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity ("RFC"); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120. The ALJ determined that given the physical requirements of Plaintiff's past work as a packer and a newspaper deliverer which required lifting more than twenty pounds, Plaintiff was unable to perform any past relevant work, and can perform only light work.

Since the Plaintiff has established that she is unable to perform any of her past relevant work, the burden shifts to the Commissioner at Step Five to determine whether the claimant is capable of performing other work which exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g) and 416.920(g). In doing so, the ALJ considered plaintiff's age, education, work experience and the residual functional capacity with the medical-vocation guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2). At the time of the alleged disability onset, plaintiff was a 36 years woman, which is defined as a younger individual age 18-49. Since she was not able to communicate in English, she was considered the way an individual who is illiterate in English. Taking these factors into consideration, in conjunction with the medical-vocational guidelines, Plaintiff was found to be able to perform all or substantially all of the exertional demands required for a full range of "light" work.

IV.

The Plaintiff argues that the ALJ did not give the treating physicians opinions enough credibility.  Generally, an opinion from a treating source should be given significantly more weight than opinions from other sources as long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).  In this case, ALJ Lissek, citing to the regulation found the "treating physician's opinions herein referenced are not supported by the record as a whole."  Lissek wrote:

> The undersigned finds that the claimant's neurologist and Dr. Nunez's assessments of disability and the claimant's inability to work are unsupported and involve an issue reserved for the Commissioner.  The undersigned notes that Dr. Nunez is a family physician, not a mental health expert, and finds no objective evidence to support his opinion. Regulations 20 C.F.R. 404.1527(d)(3) speak to the weight to be given medical opinions.  These regulations state in pertinent part: "Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." The undersigned finds that the treating physicians' opinions herein referenced are not supported by the record as a whole. Accordingly, little weight has been allotted to these opinions.

With regard to Dr. Nunez's opinion, ALJ Lissek found a disparity between Dr. Nunez's findings and Ms. Chang's own statements.[1]  Dr. Nunez opined in his "Ability To Do Work" report that Plaintiff is unable to balance, is very unstable on her feet, and is limited to the amount of noise she can be exposed to.  However, Ms. Chang herself stated in her "Function Report" that she goes outside everyday, transports her children to and from school, and does the shopping and cooking for

---

[1] ALJ Lissek criticized Dr. Nunez's findings of a psychiatric condition when his capabilities were limited to being a family physician.

12

the family.  Ms. Chang also stated in the report that she travels by walking, driving a car, and riding in a car.  Therefore, ALJ Lissek found that Ms. Chang's own statements as to her daily life discredit Dr. Nunez's findings.  Furthermore, Ms. Chang stated in the report that her daily hobbies consist of watching television and listening to the radio, activities she could not participate in if her exposure to noise is limited, as Dr. Nunez suggests.  The discrepancies in Dr. Nunez's medical opinion and the Plaintiff's own statements provide ample support for the ALJ's determination.  Similarly, Dr. Lequerica's opinion was discredited. ALJ Lissek notes that Dr. Lequerica found that Plaintiff has very limited manipulative ability, however this finding also runs contrary to Plaintiff's statement of her daily activities where she drives an auto, walks and shops.  It is also noted that at the consultative neurological examination, Dr. Fernando found that her speech, dress, and gait were normal.  Additionally, he found that Plaintiff's hand and finger dexterity was intact, and that she had full strength in her grip, upper extremities, and lower extremities.   It was also indicated that Plaintiff had a normal range of motion and no muscle atrophy.   While Plaintiff claimed to have diminished sensation of touch, pain, and vibration in her left extremities, Dr. Fernando was unable to perceive any diminution.  (R. 135).

ALJ Lissek's finding about the treating physician are based on the evidence and provide a reasonable basis for discounting Dr. Lequerica's and Dr. Nunez's opinion.

The decision of the ALJ is affirmed.  Plaintiff's complaint is dismissed with prejudice.


                                        *s/Peter G. Sheridan*
                                        PETER G. SHERIDAN, U.S.D.J.

May 1, 2009